UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**REMONA LYNETTE CHARLES,**
      **Plaintiff,**

   v.                                                                              Case No. 22-C-0637

**WELLS FARGO, N.A.,**
      **Defendant.**

## DECISION AND ORDER

Plaintiff Remona Charles filed this action against Wells Fargo Bank, N.A., alleging that Wells Fargo illegally charged her for collateral protection insurance ("CPI") in connection with her auto loan and improperly reported the status of the loan to credit reporting agencies. Before me now are Wells Fargo's motion for judgment on the pleadings and plaintiff's motion to compel discovery.

### I. BACKGROUND

According to the allegations of plaintiff's amended complaint, in August 2004, she purchased a used 2002 Dodge Ram truck from a dealership in West Allis, Wisconsin. Plaintiff financed the purchase through an entity she identifies as "Wachovia." (Am. Compl. ¶ 9.) Plaintiff alleges that "Wells Fargo acquired Wachovia in 2008." (*Id.* ¶ 6.) She alleges that, on the date of purchase, she "advised Wachovia that she maintained insurance through American Family Insurance." (*Id.* ¶ 10.)

Plaintiff made payments on the loan for several years. However, she eventually fell behind on payments, and on May 24, 2007, an entity identified in the complaint as "Wachovia Service Dealer Inc." filed a replevin action in a Milwaukee County court. (Am. Compl. ¶ 22.) The court entered a default judgment on June 13, 2007, that granted

Wachovia the right to repossess the vehicle. Plaintiff alleges that she did not receive notice of the filing of the replevin action or the entry of the default judgment.

Wachovia did not immediately repossess the truck, and over the next year plaintiff continued to make payments in an attempt to get current on the loan. However, on an evening during the summer of 2008, plaintiff's vehicle was repossessed. Following the repossession, Wachovia attempted to collect a deficiency of $7,659.76 from plaintiff.

On February 26, 2010, plaintiff filed for bankruptcy under Chapter 7. She received a discharge on June 4, 2010. Plaintiff alleges that, after the discharge, Wells Fargo did not immediately update the information it had provided to the credit reporting agencies to reflect that the debt relating to her auto loan had been discharged. However, in 2019, after plaintiff and Wells Fargo engaged in "remediation," Wells Fargo deleted its tradeline from her credit reports. (Am. Compl. ¶¶ 64, 100.)

The remediation (or mediation) arose out of correspondence that Wells Fargo began sending plaintiff in 2019. On August 22, 2019, an entity identifying itself as "Wells Fargo Auto" sent plaintiff a letter about the auto loan on the Dodge Ram truck. (Am. Compl. Ex. B.) The footer of the letter stated that Wells Fargo Auto is "a division of Wells Fargo Bank, N.A." and that plaintiff's loan may have been serviced under the names of "Wachovia Dealer Services," "Wells Fargo Dealer Services," or "Wells Fargo Auto Finance." (*Id.*) Wells Fargo Auto advised plaintiff that it had recently conducted a review of its "Collateral Protection Insurance (CPI) program." (*Id.*) The letter described CPI as "a type of insurance that protects against loss or damage to your vehicle." (*Id.*) The letter stated that Wells Fargo Auto purchased a CPI policy on plaintiff's behalf that was in effect from March 12, 2007 to June 2, 2007. It stated that it did so because its records reflected

that plaintiff did not have her own "comprehensive and collision insurance coverage" during that time frame. (*Id.*) Wells Fargo Auto then asked plaintiff to provide it with information regarding the insurance she may have had during the same time frame. The letter stated that if plaintiff did not have her own insurance, "the CPI policy was needed to cover [her] vehicle under the terms of [her] loan" and therefore plaintiff did not need to take any action. (*Id.*) But the letter stated that if plaintiff did have her own insurance, then she may be entitled to a refund. The letter advised plaintiff that, if she had her own insurance, she should provide Wells Fargo Auto with certain information about the insurance that would enable it to confirm that the placement of CPI was unwarranted.

In the following months, plaintiff responded to this letter and provided Wells Fargo with information about her insurance. On February 4, 2020, Wells Fargo sent plaintiff a letter in which it stated that, based on the information she provided, the CPI policy was appropriately purchased on her behalf because she did not have her own insurance. (Am. Compl. Ex. D.)

On December 15, 2020, however, Wells Fargo sent plaintiff a check for $5,683.41. (Am. Compl. Ex. E.) The letter accompanying the check stated in relevant part as follows:

> During a recent review of the account, we identified that, due to a misapplied payment(s), fees and other charges, plus additional interest were assessed on the account. This may have contributed to actions taken to repossess the vehicle. As a result, we are refunding $5,683.41. We apologize for any inconvenience this caused.
>
> -This check includes $4,696.41 for fees and other charges, additional interest, and costs relating to the repossession.
>
> -This check includes $987.00 as compensation for the time these funds were not available for use.
>
> -This payment is in addition to any refund we previously sent.

3

> -If applicable, we are also waiving the outstanding balance on the account following repossession, to the extent that balance was not already discharged in bankruptcy.

(*Id.*) Plaintiff alleges that she did not cash the check.

Plaintiff contacted Wells Fargo about the refund and said that it did not cover the losses she suffered as a result of the repossession. On February 10, 2021, plaintiff received a letter from Wells Fargo's "Mediation Program Administrator." (Am. Compl. Ex. F.) The letter reiterated that Wells Fargo had mailed plaintiff a refund in connection with "an internal processing error" that "may have contributed to the repossession of [her] vehicle." (*Id.*) The letter also noted that plaintiff had contacted Wells Fargo and expressed concern that the actual costs she incurred because of the repossession were greater. The letter advised plaintiff that she could pursue this matter through a "neutral telephonic mediation process" that Wells Fargo offered for free to "individuals who claim that the actual costs they incurred as a result of their vehicle being repossessed exceeded the financial reimbursement previously provided by Wells Fargo." (*Id.*) After receiving this letter, plaintiff returned a form to Wells Fargo that requested mediation. (*Id.* at 2.)

The parties were unable to reach a resolution during the mediation. On November 9, 2021, Wells Fargo sent plaintiff a letter in response to a complaint plaintiff had filed with the Better Business Bureau. (Am. Compl. Ex. H.) The letter provided in relevant part as follows:

> **About the collateral protection insurance added**
>
> We recently conducted a review of our Collateral Protection Insurance (CPI) program. CPI is a type of insurance that protects against loss or damage to a vehicle. We determined that we applied unnecessary CPI charges to your account, which may have caused adverse effects.

> As stated in our previous letter, you received $5,683.41 compensation for misapplied payment(s). Also, a remediation offered you additional compensation.
>
> We have exhausted all avenues through the mediation program. The offer we presented at mediation was declined, and we accepted the proposal provided by the neutral mediator. At this time, you can either accept the offer or pursue legal options.
>
> There will be no further actions from our group unless the neutral mediator's proposal is accepted.

(*Id.*)

Wells Fargo's practice of force-placing CPI policies was the subject of class-action litigation that was settled in 2019. *See In re Wells Fargo Collateral Protection Ins. Litig.*, No. 17-02797, 2019 WL 6219875 (C.D. Cal. November 4, 2019). The lawsuit alleged that Wells Fargo engaged in a practice of force-placing CPI policies on the loans of borrowers who already had adequate insurance. The class representatives alleged, among other things, that this practice constituted a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and amounted to an anticompetitive tying arrangement that violated the Bank Holding Company Act ("BHCA"). The lawsuit further alleged that the practice resulted in adverse credit reporting. In settling the case, Wells Fargo agreed to create a fund of more than $385 million to reimburse borrowers for the cost of unnecessary CPI and any repossessions that may have occurred. (Class Settlement Agreement at 71–73 of 76; ECF No. 28-1.) Wells Fargo agreed to use its records to locate the affected borrowers and offer them the compensation to which they were entitled under the settlement's allocation plan. (*Id.* at 20 of 76.) Wells Fargo also agreed to offer unsatisfied consumers the option to participate

5

in a telephonic mediation session. (*Id.* at 18–19 of 76.) The settlement was approved by the court on October 28, 2019. (ECF No. 28-2.)

Plaintiff's amended complaint in the present suit attempts to state claims identical to those alleged by the named plaintiffs in the prior class action litigation. She alleges RICO and BHCA claims that parallel the claims brought in the class action. Further, she brings state-law claims for fraudulent concealment, unjust enrichment, and violation of the Wisconsin Consumer Act ("WCA") that are based on allegations concerning the alleged practice of force-placing unnecessary CPI on borrowers' accounts. However, plaintiff also brings claims that were not part of the prior class action. These claims relate to Wells Fargo's credit reporting. In one claim, she alleges that, by failing to update its tradelines prior to 2019 to show that plaintiff's debt had been discharged in bankruptcy, Wells Fargo in effect attempted to coerce her into paying off the discharged debt, in violation of the discharge injunction imposed under 11 U.S.C. § 524(a)(2). Relatedly, plaintiff alleges that Wells Fargo's failure to update its credit reporting sooner violated the Fair Credit Reporting Act ("FCRA").

Wells Fargo has filed a motion for judgment on the pleadings. It seeks dismissal of plaintiff's claims that parallel those raised in the prior class action on the ground that those claims fall within the scope of the release that the class members granted Wells Fargo as part of the class settlement. Wells Fargo contends that plaintiff is bound by that release because she did not opt out of the class. In the alternative, Wells Fargo argues that plaintiff has insufficiently pleaded those claims, and that therefore they should be dismissed under Federal Rule of Civil Procedure 12(b)(6). Likewise, Wells Fargo argues

6

that plaintiff's claims for violation of the bankruptcy injunction and the FCRA are insufficiently pleaded and subject to dismissal under Rule 12(b)(6).

Wells Fargo filed its motion for judgment on the pleadings on April 27, 2023, after discovery had been in progress for five months. On July 14, 2023, five days before the close of discovery and while Wells Fargo's motion was under advisement, plaintiff filed a motion to compel discovery. The motion contends that Wells Fargo failed to properly respond to plaintiff's written discovery requests and that plaintiff cannot take depositions until it receives Wells Fargo's responses.

In this order, I address both the motion for judgment on the pleadings and the motion to compel.

## II. DISCUSSION

**A.        Motion for Judgment on the Pleadings**

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is governed by the same standard as a motion to dismiss under Rule 12(b)(6). *Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017). To avoid dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must, at a minimum, "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. In evaluating a motion to dismiss under Rule 12(b)(6), I must "accept the well-pleaded facts in the complaint as true"; however, "legal conclusions and conclusory allegations merely reciting

7

the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011).

### 1. Release

A motion for judgment on the pleadings is the proper way for a defendant to raise the affirmative defense that the plaintiff's claim is barred by a release. *ADM Alliance Nutrition, Inc. v. SGA Pharm Lab, Inc.*, 877 F.3d 742, 746 (7th Cir. 2017). Wells Fargo attached the class settlement agreement from the prior litigation and court documents associated with the settlement to its motion. I may take judicial notice of these documents and consider them without converting the motion to one for summary judgment. *See, e.g., Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022). Although the settlement agreement provides that it is governed by California law (ECF No. 28-1 at 34 of 76), the parties do not rely on California law or note any differences between California and Wisconsin law. Thus, I will apply Wisconsin law when interpreting the release. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) ("When no party raises the choice of law issue, the federal court may simply apply the forum state's substantive law.").

Under Wisconsin law, a release is to be treated as a contract. *Marx v. Morris*, 386 Wis. 2d 122, 158–59 (2019). Although contracts should be construed to give effect to the intention of the parties, "subjective intent is not the be-all and end-all" of contract interpretation. *Id.* at 159 (quoting *Tufail v. Midwest Hosp., LLC*, 348 Wis. 2d 631, 642 (2013)). Rather, the Wisconsin Supreme Court interprets the plain language of a contract "consistent with what a reasonable person would understand the words to mean under the circumstances." *Id.* (quoting *Maryland Arms Ltd. P'ship v. Connell*, 326 Wis. 2d 300, 311 (2010)).

8

The class settlement agreement contains the following release:

> Plaintiffs and each and every Settlement Class member ("Settlement Class Releasors") release and fully discharge Wells Fargo, National General, and each of their predecessors, successors, subsidiaries, parent company(ies), Affiliates, officers, directors, and employees ("Settlement Class Releasees") from any and all claims, causes of action, damages, and/or losses relating to or arising from CPI Policies that became effective on WFDS Accounts between October 15, 2005 and September 30, 2016 as well as CPI Policies that became effective on WFAF Accounts between February 2, 2006 and September 1, 2011 ("Settlement Class Released Claim"). . . .

(ECF No. 28-1 at 10–11 of 76.) To understand the scope of the release, one must turn to the agreement's definitions of relevant terms. The first relevant term is "Settlement Class," which is defined as:

> Wells Fargo Dealer Services ("WFDS") Customers who had a CPI Policy placed on their Account(s) that became effective at any time between October 15, 2005 and September 30, 2016 and Wells Fargo Auto Finance ("WFAF") Customers who had a CPI Policy placed on their Account(s) that became effective at any time between February 2, 2006 and September 1, 2011. . . .

(*Id.* at 59 of 76.) This definition, in turn, relies on the definitions of "WFDS" and "WFAF." The agreement defines "WFDS" as

> Wells Fargo Dealer Services, the former name of an auto lending division of Wells Fargo that is now part of a division named Wells Fargo Auto.

(*Id.* at 69 of 76.) It defines "WFAF" as

> Wells Fargo Auto Finance, the former name of an auto lending division of Wells Fargo as well as its predecessors, successors, affiliates, and related entities, including (without limitation) Wells Fargo Auto Finance, Inc., Wells Fargo Auto Finance Group, Wells Fargo Financial Acceptance, Inc., Wells Fargo Financial, Inc., NorWest Financial, and City Side.

(*Id.* at 69–70 of 76.) Also relevant is the definition of "Wells Fargo":

> "Wells Fargo" means Wells Fargo Bank, N.A., Wells Fargo & Co., WFDS, WFAF, and each of their predecessors, successors, and/or affiliates, including but not limited to Westfin Insurance Agency, Inc., and Wells Fargo Insurance, Inc.

9

(*Id.* at 69 of 76.)

Plaintiff does not dispute that, if she were a member of the settlement class, the release would bar her from bringing the RICO, BHCA, fraud, WCA, and unjust-enrichment claims she alleges in the amended complaint. Indeed, she concedes that those claims are identical to the claims brought in the prior litigation (Pl. Br. in Opp. at 7), and that she modeled her claims on the pleadings from the prior litigation (*id.* at 21). However, plaintiff disputes that she was a member of the settlement class. That is so, she contends, because she was a Wachovia customer, not a WFDS or WFAF customer.[1] (Am Compl. ¶¶ 9, 70–72.) But plaintiff expressly alleges that Wells Fargo acquired Wachovia in 2008 (Am. Compl. ¶ 6), and she does not grapple with the fact that the settlement agreement defines Wells Fargo and WFAF to include their "predecessors" and "affiliates." Because, as plaintiff alleges, Wells Fargo acquired Wachovia, Wachovia qualifies as its predecessor. Further, WFDS and WFAF are former names of Wells Fargo's auto-lending division. Once Wells Fargo acquired Wachovia, plaintiff became a customer of a Wells Fargo auto-lending division, as evidenced by the letters she received from Wells Fargo Auto about her Wachovia loan in 2019. (*See* Am. Compl. Exs. B–E & H.) The footers on some of the letters indicate that "Wachovia Dealer Services" had been absorbed into Wells Fargo. (*See, e.g.,* Am. Compl. Ex. B.) Even if Wachovia's auto-lending business was not directly transferred to either WFAF or WFDS as part of the acquisition and was

---

[1] Plaintiff does not contend that she opted out of the settlement class, only that she was not a member of the class in the first place. Wells Fargo has attached documents to its motion for judgment on the pleadings that show plaintiff was not among the 78 opt-outs from the class settlement. (ECF No. 28-3 at 8–10.)

10

instead maintained by Wells Fargo as a separate division, that division would qualify as an "affiliate" of WFAF. The settlement agreement defines "[a]ffiliates" as "entities controlling, controlled by, or under common control with the subject party." (ECF No. 28-1 at 58 of 76.) Once Wells Fargo acquired Wachovia, all Wachovia and Wells Fargo auto-lending divisions came under the common control of Wells Fargo and thus became affiliates. Accordingly, as of 2019, when the settlement agreement was entered, WFAF and any former Wachovia auto-lending division were affiliates.

The amended complaint makes clear that plaintiff meets the remaining aspects of the class definition. The class applies to WFAF customers who had a CPI policy placed on their account "that became effective at any time between February 2, 2006 and September 1, 2011." (ECF No. 28-1 at 59 of 76.) Plaintiff alleges that the CPI policy on her loan was in effect from March 12, 2007 to June 2, 2007. (Am. Compl. ¶ 15.) Further, plaintiff meets the definition of "Customer," which, as is relevant here, is "a customer of WFAF between February 2, 2006 and September 1, 2011." (ECF No. 28-1 at 61 of 76.) The amended complaint establishes that plaintiff's loan was being serviced by a Wells Fargo auto-lending division (or its predecessor or affiliate) during this period (Am. Compl. Ex. A), and therefore she was a "Customer" of WFAF during the relevant time. Accordingly, the amended complaint and the judicially noticeable documents establish that plaintiff was a member of the settlement class in the Wells Fargo Collateral Protection Insurance Litigation.[2]

---

[2] Because the more specific factual allegations of the complaint along with its attachments and the judicially noticeable documents establish that plaintiff was a member of the settlement class, I do not have to accept as true her more conclusory allegation (Am. Compl. ¶ 71) that she was not a member of the class. *See Abcarian v. McDonald*, 617

11

Besides arguing that she was not a member of the settlement class, plaintiff contends that Wells Fargo sent her misleading communications that prevented her from opting out of the settlement class. (Br. In Opp. at 5–6.) Here, she refers to a letter she received from Wells Fargo Auto in August 2019 about the CPI program. (Am. Compl. Ex. B.) According to documents attached to Wells Fargo's motion for judgment on the pleadings, the deadline for opting out of the settlement class was October 7, 2019. (ECF No. 28-3 at 3 of 10.) Plaintiff contends that Wells Fargo's letter misled her about the settlement because it stated that, if plaintiff did not have her own insurance during the time when CPI was placed on her account, she "did not need to take any further action." (Am. Compl. Ex. B.)

Plaintiff's argument based on this letter is undeveloped. She cites no legal authority and does not identify a legal basis on which the letter could result in her not being bound by the class release. Plaintiff does not, for example, contend that the letter undermined the court-approved notice plan in the class action or claim that the notice plan violated due process. In any event, the letter could not have misled a reasonable person about the class action. The letter's reference to plaintiff's needing to take no further action related to Wells Fargo's own review of the CPI program, which the letter stated Wells Fargo had recently conducted. The letter did not reference the class action or purport to advise her about her legal rights in that action. Accordingly, the letter provides no basis for excluding plaintiff from the scope of the class release.

---

F.3d 931, 933 n.1 (7th Cir. 2010). Moreover, plaintiff's allegation that she was not a member of the class is a legal conclusion regarding contract interpretation that I do not accept as true. *McCauley,* 671 F.3d at 616.

Plaintiff also seems to contend that, because Wells Fargo offered her mediation and she did not accept the results of the mediation, she is now free to relitigate the claims that were settled in the class action. (Br. in Opp. at 7–8.) However, as part of the class settlement, Wells Fargo agreed to offer class members the option to participate in mediation if they were not satisfied with the compensation available under the settlement's allocation plan. (ECF No. 28-1 at 18–19 of 76.) The settlement agreement also specified that a class member's dissatisfaction with the results of the mediation would not be grounds for setting aside the settlement agreement. *See id.* ("It shall also not be a breach of this Settlement Agreement if an eligible Class Member does not receive compensation by participating in the mediation program or is otherwise dissatisfied with the outcome of their mediation session with a neutral third party."). Even if the mediation was not part of the class settlement but was something that Wells Fargo offered plaintiff independently of its obligations under the settlement, plaintiff does not develop an argument showing that the offer of mediation is a basis for setting aside the release. She does not, for example, argue that Wells Fargo waived its rights under the release by extending such an offer.

In short, because plaintiff was a member of the settlement class and released Wells Fargo from liability on claims connected with the placement of CPI on her account, Wells Fargo is entitled to judgment on her claims under RICO, the BHCA, and the WCA,[3]

---

[3] Plaintiff's WCA allegations include an allegation that defendants failed to provide her with notice of the replevin action in 2007. (Am. Compl. ¶¶ 175–76.) Although a claim based on debt-collection practices might not be within the scope of the class release, such a claim would be clearly barred by the statute of limitations. *See* Wis. Stat. § 425.307(1) (establishing 6-year maximum limitations period). Accordingly, this claim will be dismissed with prejudice.

13

and on her claims for fraudulent concealment and unjust enrichment. These claims will be dismissed with prejudice and without leave to amend.

### 2. Claims Based on Credit Reporting

Wells Fargo does not contend that plaintiff's claims for violation of the bankruptcy injunction and for violation of the FCRA fall within the scope of the class-action release. However, it argues that these claims should be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

#### a. Violation of Bankruptcy Injunction

Plaintiff alleges that Wells Fargo's failure to update its credit reporting to reflect that plaintiff's auto-loan debt had been discharged in bankruptcy amounted to a violation of the statutory injunction that arises when the debtor obtains a discharge. 11 U.S.C. § 524(a)(2). Wells Fargo argues that various bankruptcy courts have held that a creditor's failure to update its credit reporting to reflect the discharge does not violate the injunction. Plaintiff argues that other bankruptcy courts have found that such a failure to update can amount to a violation.

Although not raised by the parties, I determine that this claim cannot proceed in the district court but must instead be pursued in bankruptcy court. (I raise this issue on my own because it involves the proper allocation of authority between the district court and the bankruptcy court.) The Seventh Circuit has held that, because § 524(a) creates an injunction rather than an independent civil cause of action, the proper way to enforce violations is through civil contempt proceedings before the bankruptcy court that granted the discharge. *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 915–17 (7th Cir. 2001). Thus,

14

plaintiff's attempt to enforce the injunction through an ordinary civil claim for damages will be dismissed.

Although I could refer the claim to the bankruptcy court, I decline to do so. Plaintiff has not attempted to allege civil contempt. This would involve allegations showing that there was no objectively reasonable basis for concluding that Wells Fargo's conduct might have been lawful. *See Taggart v. Lorenzen*, __ U.S. __, 139 S. Ct. 1795, 1799 (2019). For this reason, even if plaintiff's claim could proceed in the district court, I would dismiss it but grant plaintiff leave to replead. Instead, I will dismiss the claim without prejudice. If plaintiff has a good-faith basis for alleging that Wells Fargo's failure to update its credit reporting amounted to civil contempt, she may return to the bankruptcy court and seek to reopen her bankruptcy case. *Cox*, 239 F.3d at 917.

### b. Fair Credit Reporting Act

Plaintiff also contends that Wells Fargo's failure to report her debt as discharged violated the Fair Credit Reporting Act. Under the Act, a person who furnishes information to a credit reporting agency has a duty to provide accurate information and to correct information that it learns is inaccurate. *See* 15 U.S.C. § 1681s-2(a). However, the Act does not create a private right of action to enforce this duty. *See* 15 U.S.C. § 1681s-2(c); *Purcell v. Bank of America*, 659 F.3d 622, 623 (7th Cir. 2011). Still, a consumer may bring a private cause of action against a furnisher for failing, in response to notice from a credit reporting agency that the consumer disputes the accuracy of the furnished information, to conduct a reasonable investigation into the information's accuracy. *See* 15 U.S.C. § 1681s-2(b); *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005).

15

In the present case, plaintiff alleges that Wells Fargo's failure to update its tradeline to reflect the discharge amounted to a violation of § 1681s-2(a). (Am. Compl. ¶ 169.[4]) However, as just discussed, this part of the FCRA is not enforceable through a private cause of action.

In her response to Wells Fargo's motion for judgment on this claim, plaintiff does not contend that her claim should be recharacterized as one under § 1681s-2(b), which does create a private cause of action. (Br. in Opp. at 19–20.) Indeed, her response to this part of the motion is conclusory. (*See id.*) In any event, to state a claim for violation of § 1681s-2(b), plaintiff's allegations must give rise to a plausible inference that plaintiff notified a credit reporting agency that she disputed the accuracy of the information Wells Fargo had provided. *See* 15 U.S.C. § 1681s-2(b)(1) & § 1681i(a)(2). Plaintiff's allegations give rise to no such inference. Although plaintiff alleges that Wells Fargo "received the requisite notice from credit reporting agencies regarding inaccuracies in Plaintiff's credit information" (Am. Compl. ¶ 170), this allegation is insufficient. The complaint does not explain what plaintiff means by "the requisite notice." And because the allegation appears in the context of a claim under subsection (a) rather than one under subsection (b) of § 1681s-2, it cannot be reasonably construed as an allegation that plaintiff lodged a dispute regarding the accuracy of Wells Fargo's information with a credit reporting agency. Accordingly, plaintiff's FCRA claim must be dismissed.

---

[4] In this allegation plaintiff quotes from a part of the FCRA that she cites as "15 U.S.C. § 1681s-2(2)." This must be a typographical error, as there is no such provision in the FCRA. Moreover, from the fact that the part of the FCRA from which she quotes appears in § 1681s-2(a)(2), I conclude that she intended to cite that provision.

16

I have considered whether to grant plaintiff leave to amend this claim and have determined that it would be futile to do so. *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 347 (7th Cir. 2018). Plaintiff has already amended her complaint once in response to Wells Fargo's motion for judgment on the pleadings. (*See* ECF Nos. 21 & 26.) In Wells Fargo's brief in support of its original motion, Wells Fargo pointed out that plaintiff had failed to allege that she disputed the accuracy of Wells Fargo's information with a credit reporting agency. (ECF No. 22 at 17.) Thus, plaintiff already had an opportunity to amend her complaint and allege that she sent a dispute to a credit reporting agency, but she did not do so. There is no reason to think that the result would be different if I granted her a second opportunity to amend. Indeed, plaintiff does not request further leave to amend in her brief. Finally, I note that plaintiff alleges that Wells Fargo corrected the alleged inaccuracy in 2019 (Am. Compl. ¶ 64) and states in her brief that she learned of the alleged inaccuracy no later than 2019 (Br. in Opp. at 20). A claim under the FCRA is barred by the statute of limitations if it is not filed within two years of when the plaintiff learns of the inaccuracy. 15 U.S.C. § 1681p(1). Because plaintiff filed this suit more than two years after learning of the alleged inaccuracy, which has since been corrected, her FCRA claim would be barred by the statute of limitations. For this reason also, granting leave to amend would be futile.

### 3. Conclusion

To sum up, Wells Fargo's motion for judgment on the pleadings will be granted. Plaintiff's claims under RICO, the BHCA, and Wisconsin law are dismissed with prejudice based on the release in the class settlement agreement. Plaintiff's claim for violation of the discharge injunction is dismissed without prejudice to her seeking relief in the

17

bankruptcy court. Finally, plaintiff's FCRA claim is dismissed with prejudice for failure to state a claim upon which relief can be granted.

**B.     Motion to Compel**

Because my decision on the motion for judgment on the pleadings resolves this litigation, plaintiff's motion to compel discovery will be denied as moot.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Wells Fargo's motion for judgment on the pleadings (ECF No. 27) is **GRANTED**. The Clerk of Court shall enter final judgment.

**IT IS FURTHER ORDERED** that plaintiff's motion to compel discovery (ECF No. 38) is **DENIED** as **MOOT**.

Dated at Milwaukee, Wisconsin, this 2nd day of August, 2023.

/s/Lynn Adelman
LYNN ADELMAN
United States District Judge